IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PACIFICA ROSEMONT, LLC,

    Plaintiff,

v.                                                      Case No. 1:23-cv-00962-MLG-SCY

DENNIS MURPHY, as Personal Representative
of the Wrongful Death Estate of LINDA PERTILE,

    Defendant.

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL ARBITRATION

Linda Pertile died while residing at an assisted living facility owned by Plaintiff Pacifica Rosemont, LLC ("Pacifica"). *See* Doc. 1-6 at 7-8 ¶¶ 17-23. Defendant Dennis Murphy, as the personal representative of Pertile's wrongful death estate, sued Pacifica in state court. *See generally id.* He alleged that the facility's staff failed to monitor Pertile and that her death was the result of head injuries sustained during a fall. *Id.* at 8 ¶¶ 20-23. Pacifica could have challenged the merits of Murphy's claims in the state court action, or it could have requested that the state district judge send the matter to arbitration. *See* Rule 1-007.2 NMRA. It chose a different tack. Pacifica filed suit in federal court and moved to compel arbitration. *See generally* Doc. 1; Doc. 3.

The parties' arguments are familiar to the Court and hew closely to those presented in other similar matters. *See, e.g.*, *Pacifica Rosemont LLC v. Est. of Montoya ex rel. Ruyle*, No. 1:22-cv-00392, 2023 WL 5176125 (D.N.M. Aug. 11, 2023). Specifically, Pacifica asserts that Pertile gave her daughter, Shawn Tolhurst, power to make any decisions regarding health care and residential placement. Doc. 3 at 2. Vested with that authority, Tolhurst signed a Resident Admission Agreement ("RAA") with Pacifica on her mother's behalf and specifically assented to the

arbitration provision incorporated therein. *Id.* Because that term broadly covers potential claims and disputes, including those for personal injury, Pacifica argues Murphy's claims fall within the scope of the agreement and should be sent to arbitration. *Id.* at 9-10.

Murphy challenges the validity of the arbitration provision in response. Doc. 8 at 3. He argues that Tolhurst did not possess authority to sign the RAA on her mother's behalf and notes that Pertile never signed off on that particular clause. *Id.* at 3-4. Murphy also claims the arbitration provision is substantively unconscionable under New Mexico law. *Id.* at 4-5.

The Court held a hearing on this matter on May 15, 2024. *See* Doc. 13. Having reviewed the parties' submissions and arguments as well as the applicable law, the Court finds that arbitration is appropriate and grants Pacifica's Motion to Compel Arbitration ("Motion"). Doc. 3.

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, renders arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The Supreme Court has described 'this provision as reflecting both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract.'" *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1145 (10th Cir. 2014) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339(2011)). Thus, courts "begin with a strong presumption that the dispute is arbitrable," *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1201 (10th Cir. 2016), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Reeves v. Enter. Prods. Partners, LP*, 17 F.4th 1008, 1011 (10th Cir. 2021) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). This national policy favoring arbitration extends to the states and "forecloses both state legislative attempts to undercut the

enforceability of arbitration agreements and state common law principles that interfere with the enforcement of arbitration agreements according to their terms." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016) (internal quotations and citation omitted). Accordingly, "[e]ven when the state rule at issue is 'a doctrine normally thought to be generally applicable,' such as unconscionability, it may nevertheless be preempted if it has been 'applied in a fashion that disfavors arbitration.'" *Id*. at 1022-23 (quoting *Concepcion*, 563 U.S. at 341).

## ANALYSIS

The parties do not contest that the RAA's arbitration provision is subject to the FAA or that the claims in the state action fall within the scope of the provision. *See* Doc. 3 at 4, 10; *see generally* Doc. 8. Rather, their dispute centers on whether Tolhurst had authority to enter the RAA on Pertile's behalf and whether the arbitration provision is unconscionable.[1] The Court addresses each issue in turn.[2]

---

[1] Murphy raises a jurisdictional issue in his answer to Pacifica's complaint. *See* Doc. 7 at 1 ¶ 4. He asserts that the state court action includes a non-diverse defendant, Anne Licon-Kemper, whose presence destroys diversity in the current federal case. *Id*. This assertion is inapposite. In a federal lawsuit to compel arbitration, diversity jurisdiction is determined by the plaintiffs and defendants in the case before the federal district court, not the case brought in the state court. *Jerry Erwin Assocs., Inc. v. Est. of Asher ex rel. Zangara*, 290 F. Supp. 3d 1213, 1231-32 (D.N.M. 2017). Here, there is complete diversity of the parties: Pacifica is a California limited liability company, and Murphy is a New Mexico citizen representing a New Mexican decedent. Doc. 1 at 1-2 ¶¶ 1-2; Doc. 7 at 1 ¶ 2. The Court thus has jurisdiction under 28 U.S.C. § 1332 and 9 U.S.C. § 4.

[2] During the Motion hearing, the Court questioned whether a personal representative appointed under the New Mexico Wrongful Death Act, NMSA 1978, § 41-2-1 *et. seq.*, can be properly sued in a federal proceeding to compel arbitration. Hearing Tr. 7:25-8:12 (May 15, 2024). Both state and federal courts in this district answer that question in the affirmative. *See, e.g.*, *Est. of Krahmer ex rel. Peck v. Laurel Healthcare Providers, LLC*, 2014-NMCA-001, ¶ 1, 315 P.3d 298 ("[W]e hold that because a wrongful death action is entirely derivative of the decedent's right to sue, a valid arbitration agreement signed by a competent party binds that party's estate and statutory heirs in a subsequent wrongful death action."); *THI of N.M. at Vida Encantada, LLC v. Lovato*, 848 F. Supp. 2d 1309, 1328 (D.N.M. 2012) (holding that a personal representative may be sued to compel arbitration based on an agreement entered by the decedent); *see also THI of N.M. at Vida Encantada, LLC v. Archuleta*, No. Civ. 11-399, 2013 WL 2387752, at *11 (D.N.M. April 30, 2013)

3

I.       **Tolhurst's Authority as Pertile's Agent**

Prior to her admission, Pertile designated Tolhurst as her healthcare proxy and Power of Attorney. Doc. 1-2 at 1, 6. Tolhurst signed the RAA on Pertile's behalf when she was admitted to Pacifica's facility. Doc. 1-4 at 23. The RAA's arbitration provision states, in relevant part:

> any and all claims and disputes arising from or related to this Agreement or to your residency, care or services at [the assisted living facility], whether made against us or any other individual or entity, including, without limitation, personal injury claims, shall be resolved by submission to neutral, binding arbitration in accordance with the Federal Arbitration Act; except that any claim or dispute involving unlawful detainer proceedings (eviction) or any claims that can be brought in small claims court shall not be subject to arbitration unless both parties agree to arbitrate such proceedings.

Doc. 1-4 at 21.[3] Notably, the provision binds Pertile's "spouses, heirs, representatives, executors, administrators, successors, assigns, managers, and agents as applicable." *Id.*

Murphy argues that Tolhurst, as Pertile's health care agent, lacked authority to bind Pertile to the RAA's arbitration provision because it expressly states that "agreeing to arbitration is not a condition of admission to Pacifica Santa Fe." Doc. 8 at 3. This position is unsupported by the record. Prior to her admission to Pacifica's facility, Pertile executed a Durable Power of Attorney for Health Care ("Healthcare POA") which designates Tolhurst as Pertile's Health Care Agent. *See* Doc. 1-2 at 6. In that capacity, Tolhurst was authorized to admit "to or discharge [Pertile] (even against medical advice) from any hospital, nursing home, residential care, hospice program, assisted living or similar facility or service" as well as "[t]o contract on [Pertile's] behalf for any

---

(ruling that claims brought by a wrongful death personal representative were subject to arbitration under an agreement entered by the decedent before her death).

[3] The arbitration provision also permits the signatory to withdraw consent to arbitrate within thirty days. Doc. 1-4 at 21. However, neither Tolhurst nor Pertile withdrew consent within the thirty-day period. Doc. 1 at 4 ¶ 13; Doc. 7 at 2 ¶ 13.

4

health care related service or facility for [Pertile's] benefit" and to "pursu[e] any legal action in [Pertile's] name, and at the expense of [Pertile's] estate." *Id.* at 7-8 ¶¶ D, E, J. Tolhurst thus possessed authority pursuant to the Healthcare POA to bind Pertile to the RAA's terms, including the arbitration provision. *See Barron v. Evangelical Lutheran Good Samaritan Soc'y*, 2011-NMCA-094, ¶ 26, 150 N.M. 669, 265 P.3d 720 ("[A]n agent with authority to complete the documents for admission is likewise permitted to decide on behalf of the principal whether future disputes with the facility should be arbitrated or litigated."). As this Court explained in *Ruyle,* a healthcare power of attorney provides an agent with authority to bind the principal to an assisted living facility contract, and by extension, an arbitration provision contained within the contract. 2023 WL 5176125, at *3.

Along with the Healthcare POA, Pertile also executed a general Power of Attorney ("General POA"), which grants Tolhurst, as Pertile's agent, the power of "[l]itigation: to commence, prosecute, defend and oppose all actions, suits or legal proceedings to which the principal is now or may hereafter become a party, and to compromise and settle claims, *whether by litigation or otherwise*, and submit the same to judgement or other conclusion." Doc. 1-2 at 3-4 (emphasis added). The General POA further confirms Tolhurst's authority to bind Pertile to the RAA's arbitration provision because it permits Tolhurst to resolve claims by litigation or other means, including (presumably) arbitration. In other words, by executing the RAA on Pertile's behalf, Tolhurst consented to arbitration of any disputes arising from Pertile's residence in Pacifica's facility, excepting those specifically enumerated in the arbitration provision. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682-83 (2010) (holding that "an arbitrator derives his or her powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution"). That decision is consistent with Tolhurst's broad authority

to resolve potential legal claims on Pertile's behalf under the General POA. That Pertile herself did not sign the RAA is immaterial because she granted Tolhurst the authority to do in two separate, valid documents. And since the RAA binds Pertile's successors and representatives, Doc. 1-2 at 21, Murphy must submit Pertile's wrongful death claims to arbitration.

## II.    Unconscionability

Murphy also contends that the RAA's arbitration provision is unconscionable because it allows Pacifica the right to proceed in its forum of choice for certain claims of its own while limiting Pertile's claims (such as those brought in this matter) to arbitration. Doc. 8 at 4. He points to *Peavy v. Skilled Healthcare Group, Inc.* in support, where the New Mexico Supreme Court held that a court may render a contract or contract provision unenforceable if it is "unreasonably favorable to one party while precluding a meaningful choice of the other party." 2020-NMSC-010, ¶ 19, 470 P.3d 218 (2020) (citation omitted). Other state law decisions are in accord. *See, e.g.*, *Figueroa v. THI of N.M. at Casa Arena Blanca, LLC*, 2013-NMCA-077, ¶¶ 2, 28-30, 306 P.3d 480 (holding unconscionable a nursing home arbitration agreement that exempted "guardianship proceedings, collection and eviction actions initiated by the Health Care Center, [and] any dispute where the amount in controversy is less than [$2,500.00]").

However, the Tenth Circuit has rejected the unconscionability analysis adopted by New Mexico state courts as applied to arbitration agreements. *See THI of N.M. at Hobbs Ctr., LLC v. Patton*, 741 F.3d 1162, 1169 (10th Cir. 2014). In *Patton*, the Tenth Circuit held that "[a]lthough a state court can apply general rules of unconscionability to set aside an arbitration agreement covered by the FAA, the unconscionability determination cannot be based on the notion that arbitration is inferior to litigation in court." *Id.* at 1165. *Patton* expressly precludes this Court from "rely[ing] on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that

enforcement would be unconscionable[.]" *Id.* at 1168 (quoting *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)). So, while the Court is sympathetic to Murphy's position, the Tenth Circuit's decision in *Patton* is controlling. The Court cannot invalidate the RAA's arbitration provision merely because it allows Pacifica to litigate claims of its choosing while forcing Murphy to arbitrate other causes of action.

## CONCLUSION

For the above reasons, the Court grants Pacifica's Motion to Compel Arbitration. Doc. 3. The Court will enter a separate final judgment pursuant to Federal Rule of Civil Procedure 58.

It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA